**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WANDA LOUISE FLY,

                Plaintiff,

                                                                             Case No. 3:15-cv-370-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Wanda Louise Fly ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "[b]ilateral [c]arpal [t]unnel," "neck injury and pain, herniated disc," "left shoulder injury and pain," "tingling in left arm and hand," and "numbness in left hand/fingers." Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed July 1, 2015, at 160 (emphasis omitted). On February 13, 2012, Plaintiff protectively filed an application for DIB, alleging an onset disability date of December 21, 2011. Tr. at 142-43, 156. Plaintiff's protective filing date is listed elsewhere in the administrative transcript as February 10, 2012. Tr. at 71, 72, 156. Plaintiff's

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed July 1, 2015; Reference Order (Doc. No. 16), signed July 6, 2015 and entered on July 7, 2015.

application was denied initially, see Tr. at 74-78, and upon reconsideration, see Tr. at 71, 72, 81-85.

On July 17, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 29-53. On August 27, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claim. Tr. at 15-23. Plaintiff then requested review by the Appeals Council, Tr. at 6-7, and submitted evidence to the Council in the form of a brief authored by her attorney representative, Tr. at 4; see Tr. at 205-08 (brief). On January 27, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 24, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes two arguments on appeal: (1) "The Commissioner's failure to include any upper extremity limitations in [Plaintiff's] functional assessment was not supported by the medical opinion evidence of record, including the opinions of the treating pain management specialist [Dr. Kenneth Powell, D.O.], of the treating neurologist [Dr. Richard J. Boehme, M.D., Ph.D.], and of the nonexamining state agency physician [Dr. Mary Seay, M.D.], all of whom assigned upper extremity limitations to [Plaintiff]"; and (2) "[t]he Commissioner failed to articulate good cause for not crediting the opinions of Dr. Powell and Dr. Boehme. Despite seemingly crediting the opinion of state agency physician, Dr. Seay, the Commissioner failed to articulate any reasons for not crediting the upper extremity limitations assessed by Dr. Seay." Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed August 27, 2015, at 1, 8-25. Defendant

filed a Memorandum in Support of the Acting Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") on October 27, 2015.

After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step inquiry, where his inquiry ended based on his step four finding. See Tr. at 17-23.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 21, 2011, the alleged onset date." Tr. at 17 (emphasis and citation omitted).  At step two, the ALJ found

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

that Plaintiff "has the following severe impairments: herniated discs and diabetes mellitus." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§] 404.1567(a) except with no more than occasional climbing of stairs, balancing, stooping, and crouching; no climbing of ropes, ladders, and scaffolds; no kneeling or crawling; and must avoid concentrated exposure to hazards such as machinery and heights.

Tr. at 18 (emphasis omitted). At step four, the ALJ found, relying on the testimony of the VE, that Plaintiff is "capable of performing past relevant work as a human resource clerk, billing clerk, and admission clerk." Tr. at 23 (emphasis omitted). The ALJ determined that "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 33 (emphasis and citation omitted). Because the ALJ found Plaintiff capable of performing her past relevant work, the ALJ was not required to and did not proceed to step five. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability . . . from December 21, 2011, through the date of th[e] [D]ecision." Tr. at 23 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of

fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As indicated above, Plaintiff makes two related arguments on appeal. First, she challenges the ALJ's failure to include upper extremity limitations in the RFC assessed when such limitations were assigned by Drs. Powell, Boehme, and Seay. Pl.'s Br. at 8-15. In her second argument, she claims error in the ALJ's handling of the medical opinions of these three doctors. Id. at 15-25.

For the reasons discussed below, the undersigned concludes that reversal and remand is necessary on the first issue for further consideration of the Plaintiff's RFC and, on the second issue, for reconsideration of the opinion of treating neurologist, Dr. Boehme. Given this conclusion, and given that reconsideration of the evidence in light of the Court's overall findings is likely to impact the findings at which Plaintiff's remaining arguments on appeal are aimed, it is unnecessary to substantively address Plaintiff's remaining arguments. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues). A discussion follows.

## A. RFC Determination

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four of the sequential evaluation process to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

**B. Medical Opinions**

    **1. Dr. Powell's Opinion**

At the administrative hearing, Plaintiff testified that she saw Dr. Powell monthly for pain management beginning in 2012. Tr. at 41. A review of the administrative transcript reveals a record of treatment with Dr. Powell at the Coastal Spine & Pain Center on June 5, 2012.[3] Tr. at 332-334. On neurologic examination, Dr. Powell noted that Plaintiff was "alert and oriented x3, neurologically grossly intact, 5/5 strength in [upper extremities], with normal sensation and reflexes with no evidence of clonus, [H]offman's [or] Babinski signs, 5/5 strength in [lower extremities], with normal sensation and reflexes with no evidence of clonus, or Babinski signs, gait normal." Tr. at 333.[4]

Dr. Powell completed a Physical [RFC] Questionnaire on January 9, 2013. Tr. at 336-38. In the questionnaire, Dr. Powell indicated that Plaintiff is constantly experiencing pain or other symptoms severe enough to interfere with attention and concentration. Tr. at 337. He opined that Plaintiff is only able to walk up to one block without rest or severe pain, can sit for forty-five minutes before needing to get up, and can stand for fifteen minutes before needing to sit. Tr. at 337. In response to the questionnaire, Dr. Powell made multiple references to a Functional Capacity Evaluation ("FCE") that was completed at his request. Tr. at 336, 337, 338 (referring to Tr. at 312-14). In the FCE, also completed on January 9, 2013, it was determined that Plaintiff is unable to do physical work at any level, even

---

[3]     The Court notes that the record was electronically signed by Dr. Powell July 30, 2012. Tr. at 334.

[4]     According to the records, Plaintiff's next treatment at the Coastal Spine & Pain Center was with Dr. Patrick Burns, D.O., on July 3, 2012 and again on January 31, 2013. Tr. at 328-30, 377-78. There appear to be no other treatment records from Dr. Powell in the transcript.

-7-

sedentary. Tr. at 312. Additionally, it was indicated that Plaintiff can carry a maximum of three pounds, and can lift shoulder to overhead, push or pull only a negligible amount. Tr. at 313. Plaintiff is limited to reaching on the left occasionally and on the right frequently. Tr. at 313.

### 2. Dr. Boehme's Opinion

Plaintiff presented to Dr. Boehme on January 26, 2012, for evaluation and management of cervical radiculitis resulting from a motor vehicle accident occurring December 21, 2011. Tr. at 267-69. On physical examination, Plaintiff had strength of "5/5 throughout." Tr. at 268. Plaintiff had "[n]ormal muscle bulk and tone in all four extremities and [n]o tremor." Tr. at 269. Electromyography and nerve conduction studies were done February 1, 2012. Tr. at 270-73. Based on the studies, Dr. Boehme's impression was: "Left median entrapment neuropathy at the wrist, moderate. Right median entrapment neuropathy at the wrist, mild to moderate. No evidence of left cervical radiculopathy or brachial plexopathy. No evidence of systemic polyneuropathy in the upper extremities. No EMG evidence of myopathy in the left upper extremity." Tr. at 273. Plaintiff was seen in follow up on March 8, 2012. Tr. at 226-27, 265-66 (duplicate). Plaintiff had no new complaints but still had some cervical radicular symptoms. Tr. at 226, 265. Plaintiff "denie[d] weakness in her hands" and Dr. Boehme determined "ortho referral not indicated at this time." Tr. at 227, 266. On April 10, 2012, Plaintiff was seen again because of "neck pain and bilateral hand stiffness and pain and numbness." Tr. at 263-64. She had "[n]o weakness in hands" and "[n]o new complaints." Tr. at 263.

On June 5, 2012, Dr. Boehme provided a Narrative Summary regarding Plaintiff. Tr. at 324-26. Dr. Boehme stated that Plaintiff has undergone a "complete course of conservative therapy with the help of medications with some amelioration of her symptomatology but she continued to experience left cervical radiuclar symptoms and left shoulder pain." Tr. at 325. Dr. Boehme further indicated that an MRI of the left shoulder on January 12, 2012, "demonstrated significant tendinopathy of the rotator cuff and fluid collection in the biceps tendon sheath representing tenosynovitis." Tr. at 325. He noted that Plaintiff "continued with conservative treatment of her symptoms but her activities of daily living were affected." Tr. at 325. Dr. Boehme opined that "[a]ny activity that involved reaching overhead, lifting, pushing, or pulling, would exacerbate her symptoms." Tr. at 325.

### 3. Dr. Seay's Opinion

Dr. Seay, a non-examining state agency consultant, reviewed the evidence at the reconsideration level. Tr. at 65-68. Relevant to Plaintiff's arguments, Dr. Seay concluded that Plaintiff has manipulative limitations of limited reaching overhead on the left and right due to cervical degenerative disc disease with pain in both upper extremities. Tr. at 68. Dr. Seay opined that Plaintiff has the RFC to lift 20 pounds occasionally, and 10 pounds frequently; she can stand and/or walk 6 hours in an 8-hour day and can sit about 6 hours in an 8-hour day; and pushing and pulling are limited in both upper extremities. Tr. at 66-67.

### 4. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[6] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substaial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**C. Analysis**

Here, the ALJ found that the Plaintiff retained the RFC to perform less than the full range of sedentary work. Tr. at 18. In making his RFC assessment, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. at 18. Specifically, the ALJ limited Plaintiff to "no more than occasional climbing of stairs, balancing, stooping, and crouching; no climbing of ropes, ladders, and scaffolds; no kneeling or crawling; and must avoid concentrated exposure to hazards such as machinery and heights." Tr. at 18.

In her first argument, Plaintiff contends that in making his RFC assessment, the ALJ "improperly concluded that [Plaintiff] did not have any upper extremity manipulative limitations." Pl.'s Br. at 8. In that regard, Plaintiff submits that Drs. Powell, Boehme and Seay all assessed her with upper extremity limitations. Pl.'s Br. at 8-15. Pertinent to the

-12-

Court's analysis, in her second argument, she claims that the ALJ "failed to articulate good cause for not crediting the opinion[] of . . . Dr. Boehme." Id. at 15 (emphasis omitted). Defendant responds that the ALJ properly considered the medical opinions and concluded that based on Plaintiff's daily activities, relatively normal physical findings, and her conservative treatment, the RFC assessment was supported by substantial evidence. Def.'s Mem. at 3-13.

In reviewing the medical evidence of record, it is apparent that each of these doctors assessed Plaintiff with some type of upper extremity limitations, and yet, the ALJ's RFC assessment did not include any such limitations. See Tr. at 18. Nor did the Decision include a discussion of why such limitations were rejected. In the FCE signed by Dr. Powell, it was noted that Plaintiff could carry a maximum of three pounds, and could lift shoulder to overhead, push or pull only a negligible amount. Tr. at 313. Additionally, Plaintiff was limited to reaching on the left occasionally and on the right frequently. Tr. at 313. Dr. Boehme opined that "[a]ny activity that involved reaching overhead, lifting, pushing, or pulling, would exacerbate [Plaintiff's] symptoms." Tr. at 325. Similarly, Dr. Seay noted limitations in pushing, pulling, and reaching overhead on both the left and right. Tr. at 67-68. Moreover, the objective medical evidence documented Plaintiff's left shoulder problems. As noted by the ALJ,

> In January of 2012, MRI of the left shoulder performed revealed significant tendonopathy of the rotator cuff, especially anteriorly; and mild degenerative change of the glenohumeral and acromioclavicular joints with associated mild impingement. The biceps tendon appeared intact, but there was some mild fluid in the biceps tendon sheath, which might represent tenosynovitis. MRI of the cervical spine revealed significant herniations including diffuse moderate herniations asymmetric toward the right side at C4-5 and C5-6 levels with

>anterior effacement of the thecal sac, which was causing mild to moderate cord effacement at C4-5.

Tr. at 20 (citations omitted).

The RFC assessment had to include a discussion in which the ALJ "described how the evidence support[ed] each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" and "explained how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). The ALJ generally referenced Plaintiff's conservative treatment, daily activities, and improvement in symptoms with medication for finding Plaintiff not as limited as alleged and as a basis for supporting the RFC assessed, see Tr. at 22, and the ALJ recognized some physical limitations in the RFC including "no more than occasional climbing of stairs, balancing, stooping, and crouching; no climbing of ropes, ladders, and scaffolds; no kneeling or crawling." Tr. at 18. But there was no mention or discussion of any upper extremity limitations, despite the ALJ's obligation to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" see SSR 96-8P, 1996 WL 374184 at *5, nor was there any discussion as to why such limitations should not be credited despite the shoulder MRI findings and the upper extremity limitations noted by Drs. Powell, Boehme, and Seay.

As for the ALJ's reference to Plaintiff's ability to engage in certain daily activities, participation in activities of daily living do not necessarily preclude a finding of disability. See Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) (holding that "participation in everyday activities of short duration, such as housework or fishing, [does not necessarily]

-14-

disqualif[y] a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians). Regarding the ALJ's reliance on the fact that Plaintiff's symptoms have improved with medication, Dr. Boehme noted in June 2012 that despite "amelioration of her symptomatology [with the help of medication,] she continued to experience left cervical radicular symptoms and left shoulder pain." Tr. at 325.

Accordingly, the Decision is due to be reversed and remanded for the ALJ to reconsider the Plaintiff's RFC and to discuss and explain any material inconsistencies or ambiguities in the evidence related to Plaintiff's upper extremity impairments.

Regarding Plaintiff's second argument, the ALJ discussed the records of Plaintiff's treating neurologist, Dr. Boehme, but the ALJ did not state the weight attributed to the doctor's opinions. In discussing Dr. Boehme, the ALJ stated as follows:

> In a Narrative Summary completed by Dr. Boehme (Neurology Associates) in June of 2012, he stated that [Plaintiff] had been experiencing left cervical radicular symptoms into the arm and left shoulder pain since a MVA in [December 2011]. On examination, [Plaintiff] was alert and oriented times four. She was in mild discomfort secondary to symptoms. Motor strength was symmetric and normal, and sensation was grossly intact. Cerebellar and gait exams were normal. Deep tendon reflexes were symmetric. There was paravertebral muscle spasms in the cervical spine with decreased range of motion and point tenderness. Dr. Boehme stated that [Plaintiff] underwent a complete course of conservative therapy with the help of medications with some amelioration of her symptomatology, but continued to experience left cervical radicular symptoms and left shoulder pain. He noted results from MRI of the cervical spine in [January 2012], NCV/EMG study from [February 2012], and MRI of the left shoulder in [January 2012]. Dr. Boehme stated that [Plaintiff] continued with conservative treatment of her symptoms, but activities of daily living were affected; any activity that involved reaching overhead, lifting, pushing, or pulling would exacerbate her symptoms. Dr. Boehme's diagnosis was left cervical radiculitis, traumatically induced bilateral carpal tunnel syndrome, and tenosynovitis and tendinopathy of the left shoulder. He stated that [Plaintiff] had reached MMI with a 13% whole person impairment rating due to the MVA in [December 2011].

Tr. at 20 (citations omitted).  As a treating physician, Dr. Boehme's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  See 20 C.F.R. § 404.1527(c).

Plaintiff argues that the ALJ failed to state what weight he attributed to Dr. Boehme's opinion.  Pl.'s Br. at 15-18.  Defendant responds that Dr. Boehme "did not opine that [Plaintiff's] symptoms caused any functional limitations" and that the "only symptom he identified was radicular pain."  Def.'s Mem. at 12.  In this Circuit, however, Plaintiff is correct that the ALJ must state with *particularity* the weight given to different medical opinions and the reasons therefor."  Winschel, 631 F. 3d at 1179 (citations omitted) (emphasis added).  It is clear that Dr. Boehme opined that "reaching overhead, lifting, pushing, or pulling would exacerbate [Plaintiff's] symptoms" and that Plaintiff had a "13% whole person impairment rating."  Tr. at 20 (referring to Tr. at 325).  As for the radicular pain noted in Dr. Boehme's records, he specifically discussed that Plaintiff "experienc[ed] left cervical radicular symptoms into the arm and left shoulder pain."  Tr. at 324.  Dr. Boehme further noted that an MRI of her left shoulder "demonstrated significant tendinopathy of the rotator cuff and fluid collection in the biceps tendon sheath representing tenosynovitis."  Tr. at 325.

Here, the ALJ failed to state the weight attributed to these opinions of Dr. Boehme.  Tr. at 15-23.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (quoting Cowart, 662 F.2d at 735).  "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his

decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).  The undersigned finds the ALJ's failure to articulate the weight attributed to Dr. Boehme's opinion constitutes error.  Accordingly, the Decision is due to be reversed on this issue.  On remand, the Commissioner is directed to articulate the weight the Commissioner attributes to Dr. Boehme's opinions and the reasons therefor.

### V.  Conclusion

For the reasons discussed above, the matter is due to be reversed and  remanded for further administrative proceedings.  Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Reconsider the Plaintiff's RFC in light of the medical evidence regarding Plaintiff's upper extremity limitations;

    (B) Reconsider the opinion of Dr. Boehme, clearly state the weight assigned to it, and articulate the reasons therefor;

    (C) If appropriate, address the other issues raised by Plaintiff in this appeal; and

    (D) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on April 21, 2016.

*/s/ James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jde
Copies to:
Counsel of record